**United States District Court**
**District of Nebraska**

| | |
|---|---|
| **Joan O'Meara, guardian for Cynthia Susan O'Meara, a protected person,** | **Case No. 8:09CV00157** |
| **Marvin H. Gerdes and Ruth A. Gerdes, husband and wife, guardians for Kimberly Anne Gerdes, a protected person,** | |
| **Ann Marie Thurmond, guardian for Robert Nelson Thurmond III, a protected person,** | |
| **Barbara Ann Hyde, guardian for Denise Lynette Hyde, a protected person,** | |
| **Kathleen J. Seiler, guardian for Dawn Renee Bohuslavsky, a protected person,** | |
| **Judith Botts, guardian for Julie Helmly, a protected person,** | |
| **Plaintiffs,** | |
| **v.** | **First Amended Complaint** |
| **Dave Heineman, Joann Schaefer, M.D., John C. Wyvill, Ron Stegemann, and Clare E. Mahon,** | **& Jury Demand** |
| **Defendants.** | |

Plaintiffs allege:

1.      The Plaintiffs are guardians, occupying court-appointed positions, on behalf of persons with special needs for legal protection who are incompetent to attend to their affairs and have been so adjudged.  The protected person for whom each guardian acts is a developmentally-disabled person within the meaning of 42 *USC* § 1997, and provisions of Nebraska state law. Each such person has been victimized by the Defendants, who, while acting under color of state law, infringed upon their well-established statutory and constitutional rights. Each seeks redress under 42 *USC* § 3601

governing housing, and 42 *USC* § 1983, governing deprivations of rights, privileges, or immunities secured by the Constitution and laws of the United States and the State of Nebraska.

2.  This case is related to Civ. No. 08-08CV271 in this Court. Several Defendants here are defendants there. The subject matter of Civ. No. 08-08CV271 is related to the subject matter of this case.

3.  Each Defendant is a wrongdoer, clothed with the authority of state law, and acting under the color of such authority. Each Defendant was a private actor who purported to be empowered to make decisions concerning the protected person, on whose behalf each Plaintiff acts, to remove each person from his or her home at the Beatrice State Developmental Center ("BSDC"). Each such person also caused or permitted the State to fail to maintain BSDC under conditions and circumstances complying with requirements of the United States of America's Department of Health and Human Services and Center for Medical Services, and requirements of the *Civil Rights of Institutionalized Persons Act*, 42 *USC* § 1997, *US Const Amend* XIV, including its equal protection clause, its due process clause, and its privileges and immunities clause, the *Federal Fair Housing Act*, 42 *USC* § 2000(e) guaranteeing the protected persons rights not to be discriminated against in their housing status and circumstances, or to be moved from their housing by reason of any status, including the status of legal disability, and the requirements of the *Americans with Disabilities Act*, 42 *USC* § 12132, and other provisions, and the implementing regulations at 28 *CFR* § 35.130.

4.  The Defendants also caused or permitted violations of these additional provisions of law: Nebraska's Constitution's Equal Protection Clause, *Neb Const Article I* § 3 and the *Nebraska Disabilities Act*, *Neb Rev Stat* § 83-1201 *et seq.* and implementing regulations at 175 *Neb Admin Code* and 202 *Neb Admin Code* and elsewhere.

5.  These violations commenced before, and continued after, July 2, 2008 when this United States District Court entered a Final Judgment on a "settlement agreement" making Defendants Heineman, Peterson, Wyvill and Stegemann responsible to comply with the "order and judgment of this Court," rendered and entered in Civ.

[1]

### Jurisdiction, Venue and Parties

6.     The United States District Court has subject matter jurisdiction of this action pursuant to 28 *USC* § 1331, as federal questions are presented.  Venue in the District of Nebraska is proper under 28 *USC* § 1391(b), as the activity giving rise to these Claims occurred in the State of Nebraska.  All claims arise from common transactions, occurrences and actions of the Defendants. The claims are joined for this reason, and because multiple lawsuits could create risks of inconsistent results and important interests of judicial economy are served by joinder of the Plaintiffs as parties, and by joinder of their claims, in this single action.  *F R Civ P* 20(a)(1)(A, B).  The Defendants are joined because the claims presented arise out of the same transaction, occurrence or series of transactions or occurrences.  *F R Civ P* 20(a)(2).

### Parties

7.     The Plaintiffs in this action are:

7.1.     Joan O'Meara, guardian for Cynthia Susan O'Meara, serving by virtue of an appointment order issued by the County Court of Lancaster County, Nebraska in Case No. G-8568, on September 11, 1975, and earlier.

7.2.     Marvin H. Gerdes and Ruth A. Gerdes, husband and wife, guardians for Kimberly Anne Gerdes by virtue of orders issued by the County Court of Nemaha County, Nebraska on June 10, 1976.

---

[1] *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F3d 351 (8th Cir 1998) (*Clean Water Act* consent judgment case.)

7.3. Ann Marie Thurmond**,** guardian for Robert Nelson Thurmond III by virtue of orders issued by the County Court of Douglas County, Nebraska on February 10, 1994.

7.4. Barbara Ann Hyde**,** guardian for Denise Lynnette Hyde by virtue of orders issued by the County Court of Gage County, Nebraska on January 15, 2002.

7.5. Kathleen J. Seiler**,** guardian for Dawn Renee Bohuslavsky by virtue of orders issued by the County Court of Gage County, Nebraska on November 26, 1991.

7.6. Judith Botts guardian for Julie Helmly by virtue of orders issued by the Circuit Court of Coral County Florida on June 26, 1987.

8. The Defendants are:

8.1. Dave Heineman. Mr. Heineman is a Nebraska resident, who may be served with process at 1425 H St., Lincoln, NE 68508. Mr. Heineman is sued as an individual. At relevant times, Mr. Heineman held office as Governor of the State of Nebraska.

8.2. Joann Schaefer, M.D.  At relevant times, Ms. Schaefer held office of, Chief Medical Officer and Director of the Nebraska Department of Health and Human Services serving pursuant to a gubernatorial appointment.  Ms. Schaefer may be served with process at 301 Centennial Mall S., Lincoln, NE 68508. Ms. Schaefer is sued as an individual.

8.3. John C. Wyvill. At relevant times, Mr. Wyvill held the position of Director of the Division of Developmental Disabilities, Nebraska Department of Health and Human Services.  Mr. Wyvill is sued as an individual and may be served with process at 301 Centennial Mall S., Lincoln, NE 68508.

8.4. Ron Stegemann.  At relevant times, Mr. Stegemann was an employee of the Nebraska Department of Health and Human Services and at relevant times he was the Director and superintendent, or overseer, of the Nebraska State Developmental Center, Beatrice, Nebraska.  Mr. Stegemann

A53528                                                    4

is sued as an individual. He may be served with process at 301 Centennial Mall S., Lincoln, NE 68508.

8.5.    Clare E. Mahon. At relevant times, Ms. Mahon held the position of Administrator/Interim Chief Executive Office, State of Nebraska, Beatrice State Development Center. Ms. Mahon is sued as an individual. She may be served with process at 3000 Lincoln Blvd., Beatrice, NE 68310.

### General Allegations

9.    At relevant times, the Beatrice State Developmental Center was a facility providing intensive treatment services, as an acute care facility, and functioning as an Intensive Care Facility for the Mentally Retarded ("ICF/MR").

10.    At all relevant times, BSDC was owned and operated by the State of Nebraska, and its operations were the responsibilities of the Defendants.

11.    In his annual address to the Nebraska Legislature in 2007, Defendant Heineman asked the Nebraska Legislature to amend a state law restructure the Nebraska Department of Health and Human Services ("DHHS").  The Legislature responded by doing so as requested when it adopted *Neb Rev Stat* § 81-3113 et seq.  This statute became effective in 2007.[2] Defendant Heinemann used his apparent new power to harm the Plaintiffs' wards and appears to have harbored a plan to do so since as early as 2007.

12.    Each Plaintiff's protected person was a resident who lived at BSDC on a full-time basis. Plaintiffs' protected persons made BSDC their home for many years. Indeed, some of them lived there longer than 30 years.

13.    As the persons responsible for BSDC, the Defendants owed the Plaintiffs' protected persons the duty to protect their constitutional, federal, and state statutory rights including these well-established rights:

13.1.    The right to adequate protection from harm;

13.2.    The right to training and associated behavioral and mental health services;

---

[2] *See*, *also*, LB 296.

13.3.   Healthcare, including nutritional and physical management;

13.4.   Discharge planning and placement in the most integrated setting;

13.5.   Equal protection of the laws, and due process of law, under *US Const Amend* XIV and *Neb Const Article I* § 3;

13.6.   Freedom from discrimination in housing, medical care, or other services by reason of their status as disabled persons under 42 *USC* § 1997, as each protected person was an institutionalized person at relevant times;

13.7.   Equal protection of the laws under Title 19 of the *Social Security Act*, 42 *USC* § 1396 and 42 *CFR* Part 483, Subpart I;

13.8.   Equal protection of the laws and services under the *Americans with Disabilities Act*, 42 *USC* § 12132 *et seq.* and 28 *CFR* § 35.130(d), and services and equal protection of the law under the *Nebraska Disabilities Act*, *Neb Rev Stat* § 83-1201 *et seq.*

14.    These constitutional and statutory rights are recognized in federal law and in well-established, longstanding decisions of the United States Supreme Court including *Youngberg v. Romeo*, 457 US 307 (1982); *Olmstead v. LC*, 527 US 581 (1999); and in decisions of the Federal Courts of Appeals.[3]

15.    Compliance responsibility with these provisions of the law was owed to the Plaintiffs' wards by the Defendants. Yet, they infringed on the well established rights of these persons. All actions and conduct of the Defendants complained of by each Plaintiff occurred under color of state law, including *Neb Rev Stat* § 83-1, 201 *et seq.*, and *Neb Rev Stat* § 83-1, 202(8), the *Nebraska Developmental Disabilities Act*, *Neb Rev Stat* § 83-1, 201-227, and regulations of the DHHS.  One fundamental obligation of Nebraska state law is compliance with federal law. This is a constitutional requirement as federal law is supreme to state law.[4]

---

[3] See, e.g., *Kozisek v. County of Seward, Nebraska*, 539 F3d 930 (8th Cir 2008) (ADA case).
[4]  For example, *Cf. Shaw v. Delta Air Lines, Inc.*, 463 US 85, 101-06, 103 S Ct 2890, 77 LEd2d 490 (1983) (state anti-discrimination laws are not expressly preempted by ERISA insofar as they are consistent with Title VII)

16.     Federal law provides that an individual with a disability is not required "to accept an accommodation which such individual chooses not to accept."[5] This right of each protected person was also violated.  Defendants were responsible to assure BSDC was certified and maintained compliance with federal standards, known as conditions of participation, as required by 42 *CFR* Part 483, Subpart I, §§ 42 *CFR* 483.400-480.[6]  Defendants were responsible for assuring compliance with federal laws and guidelines to prevent abuse, mistreatment or neglect, promote safety and greater independence, choice, integration and productivity, and to meet the health needs of institutionalized persons including the Plaintiffs' wards.[7]  In addition, a federally mandated "State Medicaid Manual" imposes duties not performed by Defendants.[8]

17.     Defendants failed to perform these duties. On the contrary, they caused or permitted BSDC to become a substandard facility that failed to meet the needs of Plaintiffs' protected persons, failed to comply with law, and failed to achieve compliance after warning, but remained their home. Defendants failed to perform other duties to Plaintiffs as well. For example, the *Code of Federal Regulations* imposed duties on Defendants for Plaintiffs' benefit in 42 *CFR* § 441.302(d), as follows:

> When a recipient is determined to be likely to require the level of care provided in a hospital, NF, or ICF-MR, the recipient or his or her legal representative will be—
> (1)     Informed of any feasible alternatives available under the waiver, and
> (2)     Given the choice of either institutional or home and community-based services.

18.     Defendant Heineman received a specific 59-day Warning Letter dated March 7, 2008, executed by the United States Department of Justice, and by the Assistant Attorney General of the United States for Civil Rights.  Copies of the letter were sent to the Attorney General of Nebraska, the United States Attorney for the District

---

[5]  28 *CFR* 35.130(9)(e)(1).
[6]  A State Operations Manual was adopted, including an Appendix J, governing guidance to surveyors, found at www.cms.hhs.gov/manuals/Downloads /som107ap_j_intermcare.pdf.
[7]  Regulations describing these requirements include, but are not limited to, those at 42 *CFR* Part 483, Subpart I, above, and found at www.cms.hhs.gov/GuidanceForLawsAndRegulations/09_icf/mr.asp.
[8]  *The State Medicaid Manual* was first issued by the U S DHHS in December 1988. The Nebraska DHHS promulgated its version and posts it for the public at http://www.hhs.state.ne.us/med/phphys.htm.

of Nebraska, and Defendants Peterson, Wyvill, and Stegemann.  The letter reported specific findings that Mr. Heineman and the other Defendants were causing or permitting violations of the Constitutional, statutory, and other well-established legal rights of BSDC residents, including the Plaintiffs' protected persons.

19.    The Defendants acknowledged their violations of the law and submitted their acknowledgement of those violations to the United States District Court for the District of Nebraska in Civ. No. 08-08CV271.  On July 2, 2008, this Court entered judgment as follows:

> **WHEREFORE, the parties to this action having agreed to the provisions in the Consent Judgment set forth above, and the Court being advised in the premises, this Consent Judgment is hereby entered as the order and judgment of this Court.**
> **It is so ordered, this second day of July 2008 at Lincoln, Nebraska."**
>
> **Hon. Richard G. Kopf**
> **United States District Judge**

20.    Despite this Judgment, which included an obligation that the Defendants cause funding to be established for a special study by one or more independent experts and that conditions change, the Defendants did not cause conditions to change but permitted them to further deteriorate.  Under conditions violative of the protected persons' rights, the Defendants caused, or permitted, BSDC to deteriorate so dramatically as to determine and declare, themselves, it was no longer safe, fit, or suitable for the Plaintiffs' wards.  Instead of fixing the facility to comply with Constitutional, statutory, and other lawful obligations, the Defendants permitted the wards' rights to be trampled upon by moving them without warning and without alternatives being provided. This is tantamount to a corn farmer letting the weeds grow so he can file a crop loss claim.

21.    In February 2009, the Defendants, acting in concert, coined a new phrase "medically fragile" which they presented to the guardians, at a subsequent time, as descriptive of a diagnosed medical condition of the Plaintiff guardians' protected persons. But, medical science knows no such diagnosis as "medically fragile."  The diagnostic service manuals for persons with developmental disabilities or mental disorders contain

⁹ None exists. The phrase "medically fragile" was concocted to create a veneer over Defendants' actions, taken under color of state law, to remove the protected persons from their homes, with no due process of law, no respect for their rights as citizens, and to leave them without care of the kind required by state and federal laws, cited above, protecting and providing for persons with similar disabilities.

22.    For decades, BSDC was operated in a responsible and prudent way permitting it to be staffed, organized, cleaned, managed, and governed in a way that was safe, sound, respectful of its residents, and consistent with the legal rights of its residents. However, when the Defendants, as a group, took charge of the facility, they caused or permitted its deterioration, and its continuing deterioration, with the resultant infringement on the Constitutional, statutory, and other well-established legal rights of the Plaintiffs' protected persons.  No justification or excuse exists for their conduct.

23.    Defendant Schaefer, acting in concert with and for all the Defendants, narrowed the licensure scope of services permitted by BSDC and, by doing so, made it ineligible to house or care for the Plaintiffs' protected persons.  This action was taken instead of action to "fix" the problem.  All Defendants participated in this decision and in its implementation.

24.    Thereafter, the Defendants, acting in concert, arranged for the Plaintiffs' protected persons, none of whom can read and all of whom are profoundly developmentally disabled, to have notices scotch taped or posted to the door of each person's residential quarters within hours before each resident was abruptly moved from the facility.  Certain protected persons of the Plaintiffs have some limited ability to speak and understand simple things.  At least some of these persons were told they were "going on a field trip," and two changes of clothing were packed for them.  Notification was mailed to their guardians, but the notification was sent on a Friday or Saturday and

---

⁹ For at least some Federal Health & Human Services purposes the CPT are recognized and adopted as law. *Fed Reg* 07-3490 (ASCs).

delivered after the protected persons had been moved to undisclosed locations, with unknown and undisclosed capacities or abilities to provide care, in cities or at points sometimes distant from loved ones and family members, and under unknown conditions.

25.    The Plaintiffs coincidentally learned of the identities of one another, but the Defendants refused to disclose the identities of all patients moved from BSDC at or about the same time.  Moved patients, including some or all of Plaintiff's protected persons, were physically restrained and strapped or tied to gurneys, beds, chairs, or in ambulances or vans to be transported. And, they were placed into vehicles by the same persons the Defendants criticized in connection with care for other patients, as inappropriate caregivers to be transported to undisclosed destinations. The protected were frightened and responded by regressing, deteriorating, or developing health difficulties. None of the Plaintiffs' protected persons died as a result, but at least two of the persons moved are believed to have died after living for decades at home at BSDC safely and securely during times preceding BSDC's deterioration at the direction and behest of the Defendants.

26.    The Defendants further violated the Constitutional and legal rights of the Plaintiffs' protected persons under *US Const Amend* XIV, *Neb Const Art I* § 3 and *Neb Rev Stat* § 83-8, 201 *et seq*. when these patients were moved without prior notification. Before the Plaintiffs' protected persons were moved, no opportunity was granted to confront, examine, or be heard concerning the best interests or welfare of the protected persons.  This is true despite the fact the Defendants knew, or reasonably should have known, each protected person had a court appointed guardian who was entitled to the same notice as the protected person.  Specifically, Defendants knew or should have known that "a guardian of an incapacitated person has the same powers, rights, and duties respecting his or her ward that a parent has respecting his or her unemancipated minor child" under Nebraska law.[10] In fact, even the guardians for the Plaintiffs' protected persons could not have placed the protected persons outside their residences without first complying with specific evaluations including, where necessary,

---

[10] *Neb Rev Stat* § 30-2628(a).

professional evaluations to assure protection of the best interests of the impacted person.[11]

27.    The Defendants acted against the Plaintiffs' protected persons because they are developmentally disabled.  They did not take any such action against any Nebraska citizen except developmentally disabled persons.[12]  By doing so, the Defendants violated the Plaintiffs' wards' Constitutional rights to equal protection of the laws, equal privileges and immunities, due process of law, and statutory and regulatory rights conferred by federal law and the *Nebraska Developmental Disabilities Act*.

## Individual Plaintiff's Facts & Claims

### I.    Cynthia Susan O'Meara's Claim.

28.    All allegations above are repeated here.

29.    Plaintiff, Cynthia Susan O'Meara, is a profoundly learning-disabled person whose capacity to communicate is at best limited to a few words and signs. Cynthia has been diagnosed with diabetes II and requires assistance in daily living activities.  Ms. O'Meara's learning and mental disabilities began at birth.

30.    Cynthia was removed from the Beatrice State Developmental Center and placed in Bryan Hospital West. Cynthia was a resident of Beatrice State Developmental Center for 47 years, and prior to her removal to Bryan Hospital, she was happy and relatively healthy. After being moved from the Beatrice Developmental Center to Bryan Hospital, Cynthia began to lose daily skills, suffer from depression, and developed a rash which is related to the stress of her move.  Cynthia regularly expresses a desire to go home to the Beatrice State Developmental Center, and she does not understand why she was removed from her home.

31.    Joan O'Meara, who is the legal guardian of Cynthia, was not notified of the move until after it had occurred.  She had all powers conferred on guardians by Nebraska law at all relevant times.

32.    Defendants' conduct proximately caused damages to this Plaintiff. The damages are accruing, and are commonly described for all Plaintiffs' protected

---

[11] *Neb Rev Stat* § 30-2628(a)(1).
[12] *Neb Rev Stat* § 83-1205 defines what constitutes a developmental disability under Nebraska Law.

persons, below.  Cynthia's care has been complicated and compromised by Defendants' conduct.

## II.    Kimberly Ann Gerdes' Claim

33.    Kimberly Ann Gerdes is a profoundly mentally disabled individual. Kimberly has been unable to speak all of her life.  Kimberly must have 24 hour a day, seven day a week nursing care and is totally dependant on her care provider.  Kimberly requires a gastro-feeding tube.  Kimberly has suffered significant fear, high levels of anxiety and sleeplessness since she was ejected from the Beatrice State Development Center. Kimberly has suffered significant physical complications as well since her ejection from the Center.

34.    Marvin H. Gerdes and Ruth A. Gerdes, who are the legal guardians of Kimberly, were not notified of the move until after it had occurred.  They had all powers conferred on guardians by Nebraska law at all relevant times.

35.    Defendants' conduct proximately caused damages to this Plaintiff. The damages are accruing, and are commonly described for all Plaintiffs' protected persons, below.  Kimberly's care has been complicated and compromised by Defendants' conduct.

## III.    Robert Nelson Thurmond III's Claim

36.    All allegations above are repeated here.

37.    Robert Nelson Thurmond III is a profoundly mentally disabled individual.  Robert suffered a cerebral hemorrhage at birth and, as a consequence, has suffered his mental disability since birth.  Robert suffers from a seizure disorder, has difficulty swallowing, and has no verbal skills.  Robert requires complete assistance with his ADLs, decision making, communication, and normalization.   Robert has been a resident of the Beatrice State Developmental Center since July 20, 1956.

38.    Ann Marie Thurmond, who is the legal guardian of Robert, was not notified of the move until after it had occurred. She had all powers conferred on guardians by Nebraska law at all relevant times.

39.    Defendants' conduct proximately caused damages to this Plaintiff. The damages are accruing, and are commonly described for all Plaintiffs' protected

A53528                                    12

persons, below.  Robert's care has been complicated and compromised by Defendants' conduct.

## IV.    Denise Lynette Hyde's Claim

40.    All allegations above are repeated here.

41.    Denise Lynette Hyde is a profoundly learning disabled woman with severe cognitive disabilities.  Denise uses a wheelchair to move about in her environment and staff members have been instructed to assist her in walking when feasible in order to assist her in maintaining her ambulation abilities.  Denise is legally blind with no vision in her left eye and reduced vision in her right eye.  Denise also has evidence of some hearing loss. Denise currently requires a barrier-free residential setting with 24 hour awake staff members as well as routine access to health, medical, and other services. Denise requires close and constant supervision and support, and her lack of mobility requires that staff turn her every two hours during the night.

42.    Denise suffers from a variety of current health problems.  These include allergies to various medications, dysphasia, rumination and reflux, osteoporosis, constipation, and a risk of skin breakdown.  In addition, Denise requires consultation and evaluation with physical therapy due to her wheelchair use, bilateral shoe inserts, and condition of hypotonia.

43.    Denise has a feeding hysteronomy in place for nutrition due to her history of dysphasia and reflux.  The feeding tube was placed into Denise in November 1997, and she maintains a strict diet. Denise requires 24 hour available supervision due to her very limited awareness of environmental hazards, and her inability to respond to an emergency.

44.    Barbara Ann Hyde, who is the legal guardian of Denise, was not notified of the move until after it had occurred. She had all powers conferred on guardians by Nebraska law at all relevant times.

45.    Defendants' conduct proximately caused damages to this Plaintiff. The damages are accruing, and are commonly described for all Plaintiffs' protected persons, below.  Denise's care has been complicated and compromised by Defendants' conduct.

A53528                                    13

## V.    Dawn Renee Bohuslavsky's Claim

46.    All allegations above are repeated here.

47.    Dawn is a profoundly learning disabled individual.  Dawn has never been able to speak and suffers from a seizure disorder.  Dawn requires 24 hour, seven day a week care in a barrier-free residence.  Dawn needs to be repositioned by her care provider every two hours. Dawn also suffers from a Spastic Quadripareisis, has difficulty swallowing and she requires a gastric tube for nutrition.

48.    Kathleen J. Seiler, who is the legal guardian of Dawn, was not notified of the move until after it had occurred. She had all powers conferred on guardians by Nebraska law at all relevant times.

49.    Defendants' conduct proximately caused damages to this Plaintiff. The damages are accruing, and are commonly described for all Plaintiffs' protected persons, below. Defendants' conduct proximately caused damages to this Plaintiff. Dawn's care has been complicated and compromised by Defendants' conduct.

## VI.    Julie Helmly's Claim

50.    All allegations above are repeated here.

51.    Julie Helmly is a profoundly learning disabled individual. Julie suffers from cerebral palsy and is totally dependant upon others for her care.

52.    Judith Botts, who is the legal guardian of Julie, was not notified of the move until after it had occurred. She had all powers conferred on guardians by Nebraska law at all relevant times.

53.    Defendants' conduct proximately caused damages to this Plaintiff. The damages are accruing, and are commonly described for all Plaintiffs' protected persons, below. Defendants' conduct proximately caused damages to this Plaintiff. Dawn's care has been complicated and compromised by Defendants' conduct.

## Damages, Generally

54.    All the forgoing acts and conducts of Defendants occurred simultaneously and concurrently.  The claims of Plaintiffs arise, therefore, out of a single set of decisions made by the Defendants, and a single series of transactions and occurrences. The Defendants seek to shut down BSDC and chose, as a method to

A53528                                    14

accomplish this goal, the deterioration of the facility, and its rampant, recurrent, abusive violations of Federal and State law until it reached a point at which it was not fit to function as an ICF/MR.  Even after it ceased to be fit for this purpose, it remained the place of residence and home of the Plaintiffs' protected person loved ones.  Yet, because of the developmentally disabled status of these persons, Defendants abruptly removed them from their homes, without notice, warning, adequate justification, an opportunity to be heard, or due process of the law.  By doing so, it deprived the Plaintiffs' protected persons of equal protection and equal privileges and immunities.

55.    Each Plaintiff's protected person was damaged in a separate, distinct, unique way but all such damages arose out of common actions, events, occurrences, decisions, timing, and conduct. Each protected person's special damages differ, and general damages are unique.  Both special and general damages are accruing.

56.    As guardians of the protected persons, each Plaintiff was entitled to all notifications and to have all knowledge and information otherwise owed to each protected person, and each Plaintiff had a right to act on behalf of each protected person under the auspices of their status as guardians.  Yet, the Defendants trampled on these rights, which are well-established legal rights, and caused the guardians damages, too.

## Other Damages

57.    Plaintiffs have no choice but to seek legal regress to protect their loved ones, the protected persons on whose behalf this litigation is brought.  The services of lawyers, expert witnesses, and the costs of filing fees, depositions, document production and discovery, independent medical examinations, and medical testimony are all required in order to present this case in court and prove each Plaintiff's claims.  Plaintiffs are entitled to recover lawyer's fees and litigation expenses and expert witness fees pursuant to 42 *USC* § 1988(b) and 42 *USC* § 1988(c).  They each seek judgment for these fees and costs.  Plaintiffs cared for their protected persons for more than a century, collectively. They did so without resort to court proceedings, other than guardianships to protect them.  Defendants' conduct, and disregard for the rights of the protected persons, makes this litigation, and the impingement it brings on the peace and tranquility of the

13

58.    At the least, the guardians suffered emotional distress that was the direct, proximate result of the denial of procedural due process of law. This distress was incurred vicariously for the protected persons.[14]

59.    The Defendants acted willfully, maliciously and intentionally, or with wanton disregard to the rights of Plaintiffs' wards. This did so by discriminating unlawfully against the protected persons who are disabled and therefore members of a protected class as described further in ¶ 27, above.  Indeed, the Defendants set out to trample on those legal rights to achieve their objective to close the BSDC, avoid loss of federal funds, reduce state expenditures, and deprive Nebraska citizens, including the Plaintiffs' protected persons, of their well-established legal rights. Defendants exhibited the requisite malice or reckless indifference proving that they acted against the protected persons "in the face of a perceived risk that [their] actions will violate federal law."[15] Punitive damages for this willful misconduct are sought by each Plaintiff.

### Requests for Relief

60.    On the forgoing basis, Plaintiffs request judgment against the Defendants, jointly and severally, for general damages, special damages which are accruing, lawyer's fees, expert witness costs, fees and related litigation expenses, taxable costs, and punitive damages to the extent permitted by law.

---

[13] *Hammond v. Northland Counseling Center, Inc.*, 218 F3d 886 (8th Cir 2000).

[14] *Id.*

[15] *Kolstad v. Am. Dental Ass'n*, 527 US 526, 536 (1999), cited with approval, *Sturgill v. United Parcel Service, Inc.*, 512 F3d 1024, 1035 (8th Cir 2008).

A53528                                      16

**Jury Demand**

61.     Plaintiffs respectfully demand trial by jury.

July 21, 2009

By:_____s/ David A. Domina_____
David A. Domina, #11043
Brian E. Jorde, #26313
Mark D. Raffety, #19355
Domina Law Group pc llo
2425 S. 144th Street
Omaha, NE 68144
(402) 493-4100

*Plaintiffs' Lawyers*

**United States District Court**
**District of Nebraska**

| | |
|---|---|
| **Joan O'Meara, guardian for Cynthia Susan O'Meara, a protected person, et al.** | **Case No. 8:09CV00156** |
| **Plaintiffs,** | |
| **v.** | **Certificate of Service** |
| **Dave Heineman,** | |
| **Defendants.** | |

On July 21, 2009, I filed Plaintiffs' First Amended Complaint and Jury Demand with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all Counsel of Record.

/s/ David A. Domina