IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOAN O'MEARA, guardian for CYNTHIA SUSAN O'MEARA, a protected person; MARVIN H. GERDES and RUTH GERDES, husband and wife, guardians for KIMBERLY ANNE GERDES, a protected person; ANN MARIE THURMOND, guardian for ROBERT NELSON THURMOND III, a protected person; BARBARA ANN HYDE, guardian for DENISE LYNETTE HYDE, a protected person; KATHLEEN J. SEILER, guardian for DAWN RENEE BOHUSLAVSKY, a protected person; and JUDITH BOTTS, guardian for JULIE HELMLY, a protected person,<br><br>Plaintiffs,<br><br>v.<br><br>DAVE HEINEMAN, JOANN SCHAEFER, M.D., JOHN C. WYVILL, RON STEGEMANN, and CLAIRE E. MAHON,<br><br>Defendants. | Case No. 8:09cv157<br><br><br><br><br>SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

As directed by this Court in its October 5, 2009, Memorandum and Order (Filing 29), Defendants file this Supplemental Brief in Support of Defendants' Motion to Dismiss. Although Defendants' Motion to Dismiss (Filing 20) requested dismissal under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants clarify that they are now arguing for dismissal under *only* 12(b)(6).

## BACKGROUND

Plaintiffs brought suit on May 4, 2009 alleging violations of the Equal Protection, Due Process, and Privileges and Immunities Clauses of the Fourteenth Amendment of the United States Constitution, the Civil Rights of Institutionalized Persons Act, 42

1

U.S.C. §1997, the Federal Fair Housing Act, 42 U.S.C. §2000(e), the Americans with Disabilities Act, 42 U.S.C. §12132, the Equal Protection Clause of the Nebraska Constitution, Neb. Const. Art. 1, §3, and the Nebraska Disabilities Act, Neb. Rev. Stat. §83-1201 et seq.  (Filing 1, ¶¶ 3-4).  On July 13, 2009, Defendants filed a motion to dismiss.  (Filing 15).  On July 21, 2009, in light of issues raised by Defendants' Motion to Dismiss, Plaintiffs filed an Amended Complaint alleging the same violations of law. (Filing 19).  On July 22, 2009 Defendants filed its Motion to Dismiss Plaintiffs' First Amended Complaint.  (Filing 20)

Plaintiffs' claims arise out of the following relevant facts alleged in Plaintiffs' Complaint, which are deemed to be true for purposes of a Motion to Dismiss:  The Beatrice State Developmental Center ("BSDC") is owned and operated by the State of Nebraska and, prior to January 31, 2009, provided intensive treatment services as an acute care facility and was licensed as an Intensive Care Facility for the Mentally Retarded ("ICF/MR").  (Filing 19, ¶¶ 9-10).  Plaintiffs have brought this suit on behalf of their protected persons, who are developmentally-disabled individuals who resided at the Beatrice State Developmental Center in January of 2009.  (Filing 19, ¶¶ 1, 12).

On January 31, 2009, Defendant Schaefer issued an order limiting the scope of BSDC's license and prohibiting treatment of persons who were medically fragile.  (Filing 19, ¶ 23).  Because Plaintiffs' protected persons were deemed to be medically fragile, BSDC was no longer able to house or care for them.  (Filing 19, ¶ 23).  As Plaintiffs' protected persons were required to be moved immediately, so as not to endanger their health or safety, alternative residences were arranged for Plaintiffs' protected persons

and Defendants made every effort to provide reasonable notice to Plaintiffs under the circumstances. (Filing 19, ¶ 24).

Plaintiffs allege that their protected persons have been deprived of constitutional and statutory rights based on the deteriorating conditions at BSDC and the move of their protected persons, following Defendant Schaefer's January 31, 2009 Order, to other facilities licensed to provide the nature and extent of care required by their protected persons. (Filing 19, ¶¶ 13, 17, 20, 22).

## STANDARD OF REVIEW

The Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff in examining a Fed. R. Civ. P. 12(b) motion to dismiss. *Stone Motor Co. v. General Motors Corp.,* 293 F.3d 456, 464 (8th Cir. 2002).

A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the factual allegations in the complaint. As with a Rule 12(b)(1) motion, when confronted with a Rule 12(b)(6) motion, all the factual allegations contained in the complaint are accepted as true, and the complaint is reviewed to determine whether its allegations show that the pleader is entitled to relief. *Bell Atlantic Corp. v. Trombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

*Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-1965 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* If

the complaint does not state "enough facts to state a claim to relief that is plausible on its face," it must be dismissed for failure to state a claim. *Id.* at 570, 127 S. Ct. at 1974. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556, 127 S. Ct. at 1965 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974)). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966.

> Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' – 'that the pleader is entitled to relief.'

*Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009) (internal citations omitted).

**ARGUMENT**

**I.     Defendants Are Entitled to Qualified Immunity.**

Plaintiffs bring their action under the Fair Housing Act, 42 U.S.C. §3601 et seq. and 42 U.S.C. §1983. (Filing 19, ¶ 1). They assert a variety of violations under those statutes, including the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997, the Due Process, Equal Protection, and Privileges and Immunities Clauses of the Fourteenth Amendment of the United States Constitution, the Federal Fair Housing Act, 42 U.S.C. §2000(e), the Americans with Disabilities Act, 42 U.S.C. §12132, the Equal Protection Clause of the Nebraska Constitution, Neb. Const. Art. I §3, and the Nebraska Disabilities Act, Neb. Rev. Stat. §83-1201. (Filing 19, ¶¶3-4). Notwithstanding this

4

laundry-list of purported violations, Defendants are entitled to their Motion to Dismiss because Plaintiffs have failed to allege a violation by any of the Defendants, in their individual capacities, of a constitutional or statutory right which was clearly established at the time of the violation.

"Government officials performing discretionary functions are entitled to qualified immunity unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Whisman ex rel. Whisman v. Rinehart*, 119 F.3d 1303, 1309 (8th Cir. 1997).  In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted).  "[T]he Supreme Court repeatedly has emphasized the need to address qualified immunity at the earliest possible stage in the litigation." *Schatz Family v. Gierer*, 346 F.3d 1157, 1160 (8th Cir. 2003), (*citing Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534 (1991)).

"The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229, 112 S. Ct. at 537 (citations and quotations omitted).  The purpose of granting qualified immunity to public officials is to guard them from liability for the good faith performance of their discretionary duties.  As one court put it, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *David v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) (*quoting Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)).  Moreover, qualified immunity is "the usual rule" and

state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

"Until recently, [the 8th Circuit] analysis of qualified immunity was constrained by the two step sequence set forth in [*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, (2001)], which required [the court] to ask first whether 'the facts alleged show the officer's conduct violated a constitutional right.'" *Nelson v. Corr. Med. Servs.*, 2009 U.S. App. LEXIS 21730 (8th Cir. 2009) (*quoting Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). "Under *Saucier*, only if the allegations and any evidence, when viewed in a light favorable to the nonmoving party, established a constitutional violation were we permitted to ask [the second question] 'whether the right was clearly established at the time of the deprivation . . . .' *Id.*

However, this analysis changed after the United States Supreme Court's decision in *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009). "In *Pearson*, the Supreme Court held that 'while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory,' and courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Nelson*, 2009 U.S. App. LEXIS at *14 (*quoting Pearson*, 129 S. Ct. at 818) (internal citation omitted)*.* The Court concluded in *Nelson* "that it is appropriate in this case to start with the question of whether the allegations and evidence, when considered in [the officer's] favor, establish any constitutional violation." *Nelson*, 2009 U.S. App. LEXIS at *14*.

Here, Plaintiffs have failed to allege any specific facts against any of the specific Defendants, in their individual capacities, to support any of the multitude of claims in their First Amended Complaint. Thus, Plaintiffs have failed to allege violations of clearly-established constitutional or statutory rights, and Defendants' Motion to Dismiss should be granted.

### A. Plaintiffs Failed to Allege Facts Sufficient to State a Claim under 42 U.S.C. §1983.

To state a claim under 42 U.S.C. §1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and must also show that the alleged deprivation was caused by conduct of a person acting under color of state law. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). In order for Plaintiffs to bring an action under §1983, they must assert the violation of a federal right, not merely a violation of federal law. *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359 (1997).

Here, Plaintiffs invoke a number of purported violations of constitutional and statutory rights. But they fail to allege facts sufficient to establish any such violations.

### 1. Plaintiffs' Complaint Fails to Allege Deprivation of Plaintiffs' Rights under the Due Process Clause.

Plaintiffs claim that Defendants violated their due process rights under the Fourteenth Amendment of the U.S. Constitution. (Filing 19, ¶ 3). Specifically, they claim Defendants violated their fundamental rights to "adequate protection from harm," "training and associated behavioral and mental health services," "healthcare, including nutritional and physical management." (Filing 19, ¶¶ 13.1-13.3). However, the Supreme Court recently reiterated that "[t]hreadbare recitals of the elements of a cause of action,

7

supported by mere conclusory statements, do not suffice." *Iqbal* at ___, 129 S. Ct. at 1949 (*citing Twombly,* 550 U.S. at 555). While each of the substantive due process rights listed above were recognized by the United States Supreme Court in *Youngberg v. Romero*, 457 U.S. 307 (1982), Plaintiffs' First Amended Complaint contains no specific factual allegations supporting the alleged violation of these rights.

While developmentally disabled individuals in state institutions do have a "constitutionally protected interest in safety," *Id.* at 318, Plaintiffs do not specifically allege facts to support a claim that Defendants failed to adequately protect the Plaintiffs from harm while they resided at BSDC. In fact, the First Amended Complaint is void of any factual allegations of how or to what extent Plaintiffs' protected persons will be or have been harmed by the alleged failure to provide adequate protection. Plaintiffs simply allege no facts related to their protected persons' safety while at BSDC. Furthermore, Plaintiffs' vague assertions of "a substandard facility" (Filing 19, ¶ 17), "deteriorating conditions" (Filing 19, ¶ 20), and a deteriorating facility (Filing 19, ¶ 22) fail to provide any specificity regarding the manner in which conditions deteriorated and how this impacts the safety of Plaintiffs' protected persons.

While it is also true that developmentally disabled individuals in state institutions possess a constitutional right to "minimally adequate training", *Id.* at 322, Plaintiffs do not allege that their protected persons even received training or other services while at BSDC, much less that any such training or services were provided in a deficient manner.

Finally, while developmentally disabled persons are entitled to adequate medical care, Plaintiffs do not allege that their protected persons received healthcare of any

kind, much less that such level was deficient. *Id.* at 324. In the end, Plaintiffs' First Amended Complaint cannot stand on "labels and conclusions, and a formulaic recitations of the elements of a cause of action . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965-1966 (2007).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal* at ___, 129 S. Ct. at 1950. However, Plaintiffs' First Amended Complaint contains "no more than conclusions" which "are not entitled to the assumption of truth." *Id.* As the limited facts set forth in Plaintiffs' First Amended Complaint do not allege specific conduct of any particular Defendant which violated a clearly established right under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Defendants are entitled to qualified immunity and their Motion to Dismiss should be granted.

### 2. Plaintiffs Failed to Allege an Equal Protection Clause Violation.

Likewise, Plaintiffs have failed to allege sufficient facts to establish a violation of the Equal Protection Clause for which Defendants would not be protected under the doctrine of qualified immunity. For any equal protection claim, a plaintiff must allege both discriminatory effect and discriminatory purpose. *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003). This requires Plaintiffs to allege that their protected persons were treated differently than other BSDC residents under the same circumstances.

"To establish a violation of the Equal Protection Clause … [the plaintiff] must show that he was treated differently than other persons who were 'in all relevant respects similarly situated.'" *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) (*quoting Bills v. Dahm*, 32 F.3d 333, 335 (8th Cir. 1994)). Plaintiffs must make a

9

threshold showing that their protected persons are similarly situated to other BSDC residents, but were treated differently by the Defendants. *See, Klinger v. Dept. of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994).

Once again, Plaintiffs fail to allege sufficient facts demonstrating purposeful discrimination. Plaintiffs acknowledge that other developmentally disabled persons were housed at BSDC and that those determined to be medically fragile were moved also from BSDC at the same time as their protected persons. (Filing 19, ¶¶ 22-25). Plaintiffs fail to allege that their protected persons were treated any differently than other medically fragile persons at BSDC. *All* residents at BSDC determined to be medically fragile were transferred *at the same time* as Plaintiffs' protected persons, pursuant to Dr. Schaefer's Order.

Plaintiffs' only relevant allegation on this point is that Defendants "did not take any such action against any Nebraska citizen except developmentally disabled persons." (Filing 19, ¶ 27). But where, to state a claim for discrimination, Plaintiffs must allege that their protected persons were treated *differently* than others similarly situated, it can hardly be said that all Nebraska citizens are similarly situated to the medically fragile individuals residing at BSDC at the time of issuance of Dr. Schaefer's Order.

### 3. Defendants Did Not Violate Plaintiffs' Rights under Title II of the Americans with Disabilities Act.

Plaintiffs have further failed to allege Defendants deprived Plaintiffs' protected persons of any rights entitled to them under the Americans with Disabilities Act, 42 U.S.C. §12132 et seq ("ADA"). Title II of the ADA states, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

10

subjected to discrimination by any such entity." 42 U.S.C. §12132. In order to bring a claim under Title II of the ADA, "a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999).

While Defendants do not dispute Plaintiffs' protected persons had disabilities, Plaintiffs have failed to allege that their protected persons were qualified for the benefit in question and were discriminated against based upon their disability. Defendant Schaefer's Order of January 31, 2009, prohibited care and treatment of all persons at BSDC who were medically fragile. As Plaintiffs' protected persons were deemed medically fragile, they were no longer eligible for treatment and care at BSDC and, therefore, did not qualify for the benefit in question.

Plaintiffs allege Defendants violated their right to "discharge planning and placement in the most integrated setting" under Title II of the ADA. (Filing 19, ¶ 13.4). Under Title II of the ADA, the United States Supreme Court has required states "to provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated." *Olmstead v. L.C.*, 527 U.S. 581, 607, 119 S. Ct. 2176, 2190 (1999).

While Plaintiffs allege that their protected persons were moved from BSDC, the Complaint is silent as to any facts regarding the settings where their protected persons were eventually placed and whether those locations were the "most integrated settings" available. Moreover, nothing requires that an individual be placed in a particular setting,

such as BSDC, and because Defendant Schaefer's January 31, 2009 Order prohibited the care or treatment of medically fragile persons, Plaintiffs' protected persons could no longer be reasonably accommodated at BSDC.

Plaintiffs have failed to allege any facts as against any of the Defendants evidencing discrimination under Title II of the ADA. Because Plaintiffs have failed to allege a violation of a federal right under the ADA, Defendants are entitled to qualified immunity. Accordingly, the Court should grant Defendants' Motion to Dismiss.

### B. Defendants Are Also Entitled to Qualified Immunity From Plaintiffs' Allegations Under the Federal Fair Housing Act.

Plaintiffs' claim under the Fair Housing Act is substantially similar to their presumed claims under the Equal Protection Clause and the ADA and, for the same reasons, should be dismissed.

Although Plaintiffs claim to "seek redress under 42 U.S.C §3601," (Filing 19, ¶ 1), Defendants presume Plaintiffs seek redress under some other provision of the Fair Housing Act than the "declaration of policy" provision at §3601 ("It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."). Instead, Defendants surmise that Plaintiffs' First Amended Complaint actually seeks redress, through 42 U.S.C. §3613, for a violation of 42 U.S.C. §3604(f)(2), which prohibits "discriminat[ion] … in the provision of services or facilities in connection with such dwelling, because of a handicap" of Plaintiffs' protected persons.

As with their equal protection and ADA claims, Plaintiffs have failed to allege facts sufficient to demonstrate that their protected persons were discriminated against under 42 U.S.C. §3604(f)(2). No alleged facts indicate that Plaintiffs' protected persons were treated differently than any of the other medically fragile persons at BSDC who

were also transferred under Dr. Schaefer's order. And no group other than the medically fragile at BSDC can be said to be similarly situated to Plaintiffs' protected persons. Without more, Plaintiffs' allegations are insufficient to establish a claim under the Fair Housing Act and Defendants' Motion to Dismiss should be granted.

> **C. Even if Plaintiffs Have Generally Alleged a Violation of a Clearly Established Constitutional or Statutory Right, Plaintiffs Have Failed to Attribute the Violations Alleged to the Actions of Any Particular Defendant.**

Defendants are further entitled to protection under the doctrine of qualified immunity because Plaintiffs have failed to allege with particularity any specific actions taken by any of the Defendants which violated Plaintiffs' protected persons' federal constitutional or statutory rights.

To state a civil rights claim under 42 U.S.C §1983 against defendants in their individual capacities, the plaintiff must allege the defendant's individual involvement. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3rd Cir. 1988). A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. *Id.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Id.*

Plaintiffs failed to allege any specific acts performed individually by Defendants which would entitle Plaintiffs to the relief demanded. Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed. *See Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8th Cir. 2003); *Potter v. Clark*,

497 F.2d 1206, 1208 (7th Cir. 1974); *see also Black v. Lane*, 22 F.3d 1395, 1401 and n.8 (7th Cir. 1994) (district court properly dismissed complaint against one defendant when the complaint alleged only that defendant was charged with the administration of the institution and was responsible for all persons at the institution); *Allison v. Utah County Corp.*, 223 F.R.D. 638, 639 (D. Utah 2004) ("where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.") (*quoting Estate of Morris v. Dapolito*, 297 F. Supp. 2d 680, 688 (S.D.N.Y. 2004)).

Plaintiffs' First Amended Complaint makes numerous mention of and allegations against "Defendants", but fails to attribute any of those allegations to any specific individual conduct by the named defendants.  In fact, other than in the caption and in the paragraphs identifying the parties (Filing No. 19, ¶¶ 8.1-8.5), Claire Mahon's name appears *nowhere* in the First Amended Complaint.  Dr. Schaefer's name appears just once (Filing No. 19, ¶ 23), where Plaintiffs describe an action she took under the discretionary authority granted to her by the Legislature in Neb. Rev. Stat. §71-448 (Cum. Supp. 2008).  Governor Heineman's name appears twice when discussing *another* case in this Court to which he was a party (Filing No. 19, ¶¶ 5, 18) and once when mentioning that he addressed the Legislature in 2007 (Filing No. 19, ¶ 11), which he does every year.  Finally, John Wyvill's and Ron Stegemann's names appear twice in reference to the other case in this Court to which both were parties. (Filing No. 19, ¶¶ 5, 18).

14

Plaintiffs apparently believe that Defendants in this case act as one and have drafted their First Amended Complaint accordingly. Nothing could be further from the truth. Defendants each have a different job title, duties, and responsibilities. And, as can be expected of high-ranking executive branch officials, each has supervisory authority over others responsible for carrying out the decisions each of them makes.

But to the extent that any of the Defendants in this case are included as defendants because of their supervisory positions, these positions alone are not adequate to support the imposition of liability. "[T]he doctrine of respondeat superior is not available to a plaintiff in a section 1983 suit." *West by and through Norris v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997). "[F]or plaintiff to state cognizable claim, he must allege more than mere negligence on part of … defendants. Indeed, in the case of supervisory officials, he must allege some personal involvement in deprivation." *McDonald v Illinois*, 557 F.2d 596, 601-02 (7th Cir. 1977) (*cert. denied* 434 U.S. 966, 98 S. Ct. 508 (1977)) (citations omitted); *Horowitz v. Anker*, 437 F. Supp. 495, 504 (E.D.N.Y. 1977) (*aff'd without op*, 578 F.2d 1368 (2nd Cir. 1978) ("liability of defendant for deprivation of civil rights under §1983 is predicated only upon sufficient showing of that defendant's personal responsibility for claimed constitutionally impermissible conduct. It is not founded on his official position. The doctrine of respondeat superior does not apply."). As Plaintiffs have not alleged facts particular to each Defendant which would give rise to a violation of Plaintiffs' protected persons' constitutional or statutory rights, Defendants are entitled to their Motion to Dismiss and Plaintiffs' First Amended Complaint should be dismissed as against each of them.

### 1. The Actions of Dr. Schaefer Did Not Deprive Plaintiffs' Protected Persons of a Clearly Established Right.

Finally, even if a specific action taken by Dr. Schaefer deprived Plaintiffs' protected persons of a constitutional or statutory right, it cannot be said that the right was clearly established at the time of the deprivation such that Dr. Schaefer would have understood that her conduct was unlawful. The Supreme Court has described a "clearly established" right as one established in

> "a more particularized, and hence more relevant sense; the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the action in question has previously been held unlawful…but it is to say that in light of pre-existing law the unlawfulness must be apparent."

*Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987) (citations omitted).

Dr. Schaefer, as Nebraska's Chief Medical Officer and the Director of Public Health of the Division of Public Health of the Nebraska Department of Health and Human Services, limited the license of BSDC under the authority granted to her by Neb. Rev. Stat. §71-448 (Cum. Supp. 2008). Acting pursuant to existing law is exactly the type of official discretion meant to be protected under the doctrine of qualified immunity. *See Kloch v. Kohl*, 545 F.3d 603, 609 (8th Cir. 2009) (Nebraska Attorney General's statutory obligation to enforce the laws of the state protected under the second prong of the qualified immunity analysis); *Cf. Watts v. Burkhart*, 978 F.2d 269, 274-75 (6th Cir. 1992) (members of state board of medicine, sued in individual capacities under 42 U.S.C. §1983, were entitled to claim quasi-judicial immunity in discharge of statutory duties pertaining to licensure of persons to practice medicine in state); *Horwitz v. State*

*Bd. of Medical Examiners*, 822 F.2d 1508 (10th Cir. 1987), *cert. denied* 484 U.S. 964, 108 S. Ct. 453 (1987) (members of Colorado State Board of Medical Examiners entitled to absolute immunity for damages in a 42 U.S.C. §1983 action after ordering suspension of podiatrist's license to practice medicine in Colorado).

As any action taken by Dr. Schaefer did not violate any clearly established rights of Plaintiffs' protected persons so as to fall outside the realm of protection under the doctrine of qualified immunity, Defendants are entitled to their Motion to Dismiss.

**II.     Several of Plaintiffs' Claims Cannot Be Brought in Federal District Court.**

Finally, several of the claims purported to be raised by Plaintiffs should be dismissed as they are not properly brought by these Plaintiffs in this Court.  First, Plaintiffs request relief under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997 et seq. (Filing 19, ¶ 3).  However, this claim should be dismissed because that Act only authorizes the United States Attorney General to institute civil actions against certain institutions for violating the civil rights of institutionalized persons and precludes a private cause of action.  *McRorie v. Shimoda*, 795 F.2d 780, 782, n. 3 (9th Cir. 1986); *Cooper v. Sumner*, 672 F.Supp. 1361, 1367 (D. Nev. 1987).  A dismissal of a §1983 claim for lack of an enforceable federal right is analogous to a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Anderson v. Jackson*, 556 F.3d 351, 355 (5th Cir. 2009).  As there is no private right of action to bring a violation of the Civil Rights of Institutionalized Persons Act, Defendants' Motion to Dismiss should be granted.

Plaintiffs also attempt to seek relief for violations of Neb. Const. art. I, §3, and the Nebraska Developmental Disabilities Act, Neb. Rev. Stat. §83-1201 et seq. (Reissue

2008, Supp. 2009). (Filing 19, ¶¶ 4, 13.5, 13.8). Those claims should also be dismissed because state law does not create duties under the federal constitution, and violations of state law are by themselves insufficient to impose liability under §1983. See *Bagley v. Rogerson*, 5 F.3d 325, 326 (8th Cir. 1993) ("an allegation of a violation of state law, statutory or decisional, does not, in itself, state a claim under the federal Constitution or 42 U.S.C. § 1983."). As Plaintiffs cannot utilize 42 U.S.C. §1983 as a vehicle to bring violations of the Nebraska Constitution and statutes, Plaintiffs' state law claims should be dismissed.

## CONCLUSION

Defendants ask this Court to dismiss Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 12(b)(6).

Dated November 2, 2009.

        **DAVE HEINEMAN; JOANN SCHAEFER, M.D.; JOHN C. WYVILL; RON STEGEMANN; and CLARE E. MAHON.**

        BY:    JON BRUNING, #20351
                 Attorney General

        BY:    s/*Katherine J. Spohn*
                 Katherine J. Spohn, #22979
                 Kevin L. Griess, #22182

Assistant Attorneys General
2115 State Capitol
Lincoln, NE  68508
Phone: (402) 471-2682
Fax: (402) 471-2957
katie.spohn@nebraska.gov
kevin.griess@nebraska.gov

<u>Attorneys for the defendants</u>.

## CERTIFICATE OF SERVICE

The undersigned certifies that this Brief in Support of Motion to Dismiss Plaintiffs' First Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the plaintiffs' attorneys of record on this 2nd day of November, 2009.

*/s/ Katherine J. Spohn*
Katherine J. Spohn
Assistant Attorney General